United States of America v. Paulo Murta. Are we ready to proceed? And you're Ms. Rao. You may proceed. May it please the Court, Sangeeta Rao on behalf of the United States. This is a government appeal from the District Court's erroneous pretrial dismissal of one FCPA conspiracy count and three charges under the money laundering statute. This appeal raises the same issues as the appeal in Co-Defendant Raffoi's case that the Court heard last month, plus some additional issues, including statute of limitations and suppression. That's why you look so familiar. Yes, you're right. All right. I'm going to Is it the only two additional issues? Is that correct? Due process is an additional issue, and so is the 78DD3 object. I'm going to address the issues in roughly the same order as the government's brief, skipping some of the more straightforward issues, unless the Court has questions, and making sure that I get to statute of limitations and suppression. On FCPA conspiracy, the indictment validly pleaded liability against defendant on three distinct theories. It charged him with FCA conspiracy as an enumerated person in the FCPA statute, an agent of a domestic concern, as another category of enumerated persons, a foreign person who acted on U.S. land, and a non-enumerated FCPA actor. The district court erred in dismissing all three theories. I'm first going to address extraterritoriality, and then I'm going to address the Gabbardi presumption as it relates to the non-enumerated actor theory. Just like we said in the Raffoi case, this Court need not decide whether an FCPA conspiracy offense applies extraterritorially, because under the Supreme Court's two-step framework, this case can be resolved at step two, as a domestic application of an FCPA conspiracy offense. Now, defendant really does not contest that the allegations demonstrate a domestic application. He makes another argument. He says you can't get to step two at all, and I'll address that in a minute. But when you do look at step two, there is a lot of U.S. conduct, U.S. conduct that is the focus of an FCPA conspiracy offense. There are U.S. persons paying bribes to benefit U.S. businesses. They're using U.S. bank accounts. They're using U.S. wires. Defendant himself used U.S. wires to communicate with his U.S.-based co-conspirators, and significantly, defendant himself acted on U.S. soil. He came to Florida to have a meeting about the bribery scheme. The indictment alleges the defendant came here to discuss the scheme. That's at paragraph 206, and that paragraph is specifically incorporated in the FCPA conspiracy count in paragraph 235. So it's clear that this case involves a domestic application. This Court can start and resolve this case at step two. Unlike Refoy, Murta contests this principle, but he's wrong. In RJR Nabisco, the Supreme Court explained that while it will usually be preferable for courts to begin at step one to obviate the need to figure out the statute's focus, the Court did not mean to preclude courts from starting at step two in appropriate cases. That's at footnote five. And in Western Gigo, the Supreme Court confirmed the courts may start and end at step two by doing just that, starting and stopping at step two. The circuit courts have also done this, the Ninth Circuit in Hussein, the Fourth Circuit in Harris, and even the Second Circuit in Kalachenko, an unpublished decision. It makes no sense to hold that you can't rely on step two whenever the statute has some extraterritorial application. That's an error the Hoskins I Court made. If you can only go to step two in a subset of cases, then you always have to resolve step one to see whether you can go to step two. But we know that's not the rule from just from Western Gigo, where the Supreme Court started and stopped at step two. It could also lead to perverse results. In certain cases, such as this one, it would mean that a broad statute that's meant to apply both domestically and extraterritorially encompasses less conduct than a statute that applies only domestically. This Court's decision in Vasquez does not require a different result. In that case, in stating that courts proceed to step two if and only if the statute does not overcome the presumption against extraterritoriality at step one, Vasquez merely cited to footnote five in RJR, which expressly allows courts to begin at step two. Vasquez didn't acknowledge Western Gigo, where the Supreme Court started and stopped at step two. And that quote from Vasquez was merely dicta. At a minimum, Vasquez contemplates going to step two after step one. And here, when you go to step two, the FCPA conspiracy charge is valid as a domestic application of the statute. Turning to Gabbardi, the indictment validly pleads the defendant is guilty of FCPA conspiracy even if he isn't an agent and even if he didn't take action on U.S. soil. MRTA doesn't fall within the narrow Gabbardi exception to the general applicability of conspiracy charges. On the other hand, Gabbardi is weak, as this court stated in Filetta. Before Gabbardi can arguably apply, the statutory text must demonstrate that a party necessarily, or at least typically involved in the criminal transaction, is exempt from substantive liability. And that's exactly the analysis this court employed in Castle. MRTA is not that kind of a defendant. He's not a necessary party. Now, the court in Castle did say that Congress, in enacting the FCPA, was concerned with regulating U.S. entities and citizens. But it said that not as a blanket rule, but in explaining why, once it was determined that Gabbardi might exclude the foreign officials because they were necessary parties, whether Gabbardi actually should be applied to exclude the foreign officials. Because remember, Gabbardi is a weak presumption. So even when a necessary party is omitted from substantive liability, Gabbardi does not necessarily apply, as this court held in Filetta. But even if Gabbardi allowed this court to go beyond a necessary party analysis and consider other generalized concerns like extraterritoriality, Gabbardi applies narrowly, like a scalpel. And that means it does not apply here, where MRTA conspired to commit a domestic offense. We know that Gabbardi applies like a scalpel from Gabbardi itself, where the court made distinctions among different types of women's conduct in carving out a category that couldn't be prosecuted. Gabbardi involved the Mann Act, which prohibited the transportation of a woman across state lines for prostitution. In Gabbardi, the Supreme Court reaffirmed its prior holding and hoped that the woman being transported could be the commission of the offense. And the only thing carved out as immune from prosecution was a woman who merely acquiesced in her own transportation. And that's because when the court applies Gabbardi and when it identifies that affirmative legislative policy to leave someone unpunished, it does so narrowly, like a scalpel. Here, even if this court could discern an affirmative legislative policy in the FCPA to leave certain foreigners unpunished for an extraterritorial offense, there is no discernible legislative policy to leave unpunished a foreigner who is conspiring to commit a domestic offense. It's a long and well-established principle that that kind of foreign national is culpable under U.S. law. There's the Ford case in the Supreme Court, Rivard in this court, and other cases in this court. The Congress that enacted the FCPA was well aware of that principle, and we know that because a pertinent House report cites to this court's decision in Rivard, which stands for that very principle. I'm going to turn now to the statute of limitations issue, unless the court has questions on others. On statute of limitations, the Murtaugh indictment did not violate the statute of limitations. At the threshold, I want to make something very clear. The United States agrees that the term offense in Section 3292 is broad. It is not person-specific, and it's not statute-specific. As courts have recognized, it has to be broad, because at the time the government is filing a tolling application, it's at an investigative stage. It doesn't know the parameters of the crime. It doesn't know where the evidence will lead or to who. So a tolling order applies broadly to all offenses that are reasonably related to the investigation in the application. What's your best Fifth Circuit or Supreme Court case for that proposition? I think Meador itself, actually, is your Honor. Meador talks about the statutory purpose and cites the House report that discusses that. So here, Murch's offenses were described and encompassed by both the first 2015 tolling order, which was based on the December 2014 MLAT, when the government was at the beginning stages of learning about Rincon and Shira's bribery scheme involving low-level officials, and also by the 2017 tolling order, based on the November 16 MLAT, when the government was seeking information about the bribery involving the high-level management team. Now, the government's position is that this Court can resolve this case based only on the 2017 tolling order. But if the Court disagrees, it should then remand for the District Court to consider further the 2015 tolling order. So I'll discuss the 2015 order second. Turning to Judge Lake's 2017 tolling order, it was valid. It satisfies the plaintext, context, and statutory purpose of Section 3292. Murch's indictment was in 2019. The tolling application was filed in 2017, before return of an indictment, charging offenses that were identified as being under investigation. Just under the plaintext and context, what happened here fits. It also fits with statutory purpose and the realities of how grand juries work. 3292 was passed because Congress realized how difficult it was to investigate transnational crimes. It wanted to give the government time to obtain the foreign evidence by providing a way to extend limitations. The normal practice for grand juries are to continue an investigation into offenses and to add new or modified charges or new defendants. At the same time, the grand jury is not to be used as the discovery device in preparation for trial. That would be grand jury abuse. So here, the phrase return of an indictment wasn't meant to abruptly terminate the grand jury indictments in the normal course. It was merely a recognition that the investigative purpose of a grand jury is satisfied as long as an application is filed before return of an indictment. And any potential for abuse of the statute is cabined by the statute itself, which limits the total of all periods of suspension to three years, even if an investigation into specific offenses is ongoing. Now, if it's necessary for the 2019 Myrta indictment to charge offenses that weren't charged in the 2015 Rincon indictment, the indictment does that. There are the two substantive money laundering offenses, counts 18 and 19. Those weren't charged in the 2015 Rincon indictment. They should survive. As to the two conspiracies, at least as far as the indictments go, different offenses were charged. It's a separate question whether it all could have been charged as one single conspiracy. If you look at the indictments, Rincon and Shira are involved in both schemes, but that doesn't make them the same, and it's not how they were charged. The Rincon indictment was involving low-level procurement officials, such as buyers and purchasing analysts. On the other hand, the later indictment is charging a bribery scheme involving high-level officials, like the president of Bear Van, a former general manager, an assistant to the president. As charged, those conspiracies are sufficiently separate. But if this Court finds that the 2017 tolling order wasn't valid, it should remand for consideration of the 2015 tolling order based on the 2014 request to Switzerland. The district court considered that tolling order, but it made a legal and factual error in determining when final action by the Swiss government occurred. It linked final action to the return of an indictment, and that's just not correct. We discussed that error in our opening brief, so it's before this Court, and the Court should remand if it decides that the 2015 tolling order is necessary. I will go to the suppression issue, unless the Court has more questions on limitations. The totality of the circumstances established that Murtaugh was not in custody when he was being interviewed in Portugal. So there's no evidentiary hearing on this motion to suppress. It was there. Right. There has been no evidentiary hearing, and we think that on the record, the facts even take, as the defendant is positing them, this Court can find that there was, that he was not in custody. Okay. But if this Court has any concerns about that, it should remand for more findings, because the district court's findings were unsupported. Review for us, and maybe, I think you were about to, when I interrupted you, if you could review for us what is in the record that you believe warrants the denial of the motion, particularly on the custody issue. So just denying it outright, there are a number of factors. Most significantly, the presence of Murtaugh's lawyer during the interview. That significantly undercut any potential for coercion, and he was able to consult with him throughout the interview. The interview was in a conference room of a local prosecutor's office, not at a The agents, according to defendant, repeatedly advised him that he was a witness, not a target or a subject. Defendant has not asserted that the agents were abusive or aggressive in their questioning. The district court said that the agents were intimidating, but defendant did not make that assertion or otherwise describe the manner of questioning as being hostile. Murtaugh was not restrained in any way or told he couldn't leave. He was allowed to take breaks, which he did, and he left for lunch. The DHS agents lacked the authority to arrest Murtaugh. Murtaugh and his lawyer reviewed the interview notes afterwards, they made edits, and he was free to leave at the conclusion of the interview. What are the circumstances that led to his presence in that conference room? I'm sorry. What led to his presence? What led to his presence? How did he get there? He didn't just walk in off the street and say, I want to check. He was given a notice to, he was sent a notice to appear. The notice to appear did compel his presence according to the notice. It said an unexplained absence could lead to a consequence. And according to the expert declaration from the Portuguese attorney, he was required to attend. The district court relied on that declaration that said he was required to attend to find that he was not allowed to leave. But the declaration doesn't say that. The declaration carefully says he was allowed to leave. Walk in and say hello and then just walk right out. Yes. That constitutes attendance. Well, the government in the district court, in fact, said very specifically, the interviewers had no ability and no authorization to arrest the defendant. Had Murtaugh decided to not answer questions or even to stand up and walk out, they would not have been able to stop him. And that's at ROA 725. If the district court wanted to make a different finding, it needed to have an evidentiary hearing. If the court doesn't have any other questions. Thank you, counsel. Mr. Lake. Yes, Your Honor. You may proceed. Thank you, and may it please the court. I'm Joshua Lake on behalf of Paolo Murtaugh. And I'll start, Judging Lord, with your first question. The Rafoi case only raises one of the four issues. In this case, that's the extraterritorial jurisdiction. That's the only one at issue there. Here, there's three independent rulings the district court made. So the court ruled in Mr. Murtaugh's favor on four independent grounds. The government just discussed three of those. The fourth. Limitations. The motion to suppress and. Extraterritorial jurisdiction. And then the fourth is due process nexus. Okay. Right. So those four grounds. So the government needs this court to rule in its favor on four grounds. It's asking the court to do that. To go to all four issues. And I would submit that the most appropriate way to resolve this case instead. Is that the statute of limitations issue. That's consistent with the doctrine of constitutional avoidance. Not to weigh into Fifth Amendment due process. Extraterritorial jurisdiction. Our argument is that this prosecution was void at its initiation. And we'd ask the court to affirm the district court's conclusion. That the indictment was untimely filed outside the statute of limitations. In short. We asked this court to hold that the 2017 tolling application. Was ineffective. Because the offenses it described. Had already been indicted in 2015. That's what the district court found. And we think this court could affirm that decision. And not move on to the other three issues. What case would support that? I mean it seems like it's pretty well known and established. That a grand jury's work. Particularly on a conspiracy claim. Is something that's ongoing. And other people are involved. As they bring people into the grand jury room. What case law or statutory authority. Prevents the government from amending in a defendant. Who is learned about through the grand jury process. After the original indictment. Nothing. And to be clear. I appreciate the question. Our position is not the way the government framed it. Which is that our interpretation. Would prohibit the government from indicting additional folks. That's not our argument. It's from the text of 3292A. That if the government wants to file a new tolling application. To ask for a new period of suspension. That must be done before return of an indictment. So the government. The grand jury always has the freedom within limitations. To indict new people. And the case law that the government mentions. Talks about this statute as offense specific. Saying. And this is the Neal case and others. That if you held it was person specific. That would require the government to be omniscient. As to who all would be involved. And that's just not knowable at the outset. But what the government is doing. Is it's wanting to have it both ways. It wants the benefit of 3292. To be offense specific. It can toll for a whole offense. Without regard to which people are involved. But for the requirements. The limits on the government. It wants it to be person specific. It wants before return of an indictment. To be limited to individuals. Here the government had already indicted this scheme in 2015. Which is why the 2017 application fails the test. And so. With respect. The government also points to a 2015 tolling order. And I wanted to address that briefly. The government has affirmatively waived that argument. Both in the district court and here. It abandoned that argument here. By failing to raise it. In it's opening brief. And I would point the court to pages 38 and 39. Of it's brief. Where it called the district court's decision to review that earlier order. Irrelevant. Because the government only relied on one tolling order. And in the district court. Mr. Murtaugh. We frequently filed motions to get discovery. Regarding these MLAT requests. And at page 704 of the record. The government opposed that motion. Saying. And I'll flip to it to make sure I get the exact quote. The government told the district court. That it should deny our request for discovery. Because the government is not relying on any other MLAT request. From any other country. To toll the applicable statute of limitations. And it went on to say. We've already given them everything about the 2017. I can also point to page 887 in the record. Or 911. Where the district court said. The government is disclaiming reliance on any other tolling order. There's no merit to the government's position. Raised only in a reply brief. That you should remand to consider the earlier tolling order. The same would be true for it's argument. That you can divorce the substantive counts from the conspiracy counts. That only is raised in a reply brief. Never an oral argument. Also not raised below. Had they said that below. We would have been able to show. And ask for an evidentiary hearing. Just for context. Counts 18 and 19 are substantive. They allege transfers from Rincone Company 2 to Rincone Company 8. Those are companies. Rincone Company 2. The sending company. Is based in both U.S. and Venezuela. Rincone Company 8. Is based in Venezuela. So the transfers are between either U.S. and Venezuela. Or Venezuela and Venezuela. This tolling application is based on an MLAT to Switzerland. So had the government ever tried to argue. There's something unique about counts 18 and 19. We would have been able to present to the district court. Our position that it's utterly irrelevant. Because they're involving different countries. The evidence it requested in 2017. Wouldn't get at this specific transfer. Up until the reply brief. The government had always treated it kind of as a broad offense. Writ large. This conspiracy. This scheme. And the court shouldn't consider it's argument. Raised in a reply brief. That it should be treated differently. Substantive versus conspiracy. Coming back to the statute itself. I think there's two questions here for the court. One is legal. And one is factual. For the factual question. It's what are the offenses? The factual question is. Does the 2017 application try to toll limitations for offenses. That were indicted in 2015? As to that factual question. The district court said yes. And that's at page 912. And the government hasn't shown that's clear error. In terms of the legal question though. What is the meaning of the phrase? Before return of an indictment. We do think that's offense specific. The greater context. Says that this is all about offenses. And the government has repeatedly pointed that out. This is offense specific. 3292A refers to an offense. Or the offense three times. So when the statute says. Before return of an indictment. The indefinite article. And there naturally is read as any. It's read very broadly. We have said that if you took it literally as any. It would lead to illogical results. A DWI indictment shouldn't toll an FCPA crime. Right. That's not our argument. So you have to look for limiting principles in the statute itself. And so an indictment is cabined to. And the government recognizes this. Page 15 of its reply brief. It's cabined to the offenses the government is trying to toll limitations for. That's the indictment that matters. It must be before return of that indictment. And so at the tolling stage. The district court's obligation is to look first at what is the government asking. Because remember the tolling through 3292 is an ex parte proceeding. It's non-adversarial. It's akin to a search warrant application. Where without another party present. The government goes to the judge and asks. With a burden of proof. For certain remedy. For certain relief. And so the judge. And the application we're talking about starts at page 1560 of the record. Would begin to open the government's application. And say which offenses is it trying to toll limitations for. And the first page of the application says. That they want to suspend the running of limitations. For offenses arising out of the investigation. Of Rincone. Shira. And others. That's how it describes it at the outset. The investigation of those men. Rincone and Shira. As it says at the bottom of that same page. Were the two men indicted in 2015. So on the very first page of the application. Judge Lake. The tolling court should have immediately had questions. Why are you seeking to toll offenses that you are telling me have just been indicted. But if we go on the next page. This is 1561 of the record. Describes which charges specifically. Which statutes. The government is seeking to toll. And it lists the FCPA. Money laundering and conspiracy. Further down that exact page. Is where the government says. That's what we indicted Rincone and Shira for. I would say. The. The most conclusive fact in this application. The government attaches to its application. Two documents. One is a sworn declaration from the case agent. And the second is the. That it sent to Switzerland. Asking for this evidence. And at page 1586 of the record. That's in the. Sent to Switzerland. It says. No new offenses. Have been identified. Since we sent our last request in 2014. Right away. The tolling court should have seen that. And said. How are you presenting me with an argument that you can toll offenses. You haven't indicted them. But you're telling the country you're requesting things from. You haven't identified new offenses. In this case. I think the district court had it exactly. Right. The government can't have its cake and eat it too. And kind of coming back to your question earlier. Judging the heart. I would say grand jury practice. And the love Osco case in the Supreme Court is a good example of this. There. Justice Marshall writing for the court. Refused to require a grand jury to indict. As soon as it had probable cause. Saying it's a double-edged sword. But prosecutors choose. When to indict. There's benefits to both waiting and indicting. Specifically what he said is in cases involving more than one person. Or more than one offense. A premature indictment can impair the prosecutor's ability. To continue investigating. But that's at their discretion. The same is true under our interpretation. I'm just trying to understand. You're not saying that. That when you identify offenses. You need to simultaneously identify offenders. No. I don't believe you do. And that comes from the Neal case. And the principle that the government isn't required. But you're saying the identification of offenses can limit. Future. Prosecutions. Yes. And if I could. The reason I believe that's the case. Why Congress would want to write a statute this way. Is putting it in context. We know the well-established principle. Limitation statutes are to be liberally interpreted in favor of repose. That's the default. And limitation statutes are congressional recognition. Congressional recognition of the presumptively reasonable time. Within which charges should be brought. 3292 is unique. In that it allows for up to a three-year extension. Of the normally reasonable period. So that when there's international evidence. The government has time to get that evidence. That's the idea. If the government has already indicted an offense. It no longer has the same necessity for that evidence. That would have justified going beyond the presumptively reasonable period. So here. Getting at what can and can't the government do. It still controls when to indict. If it believes it needs to seek additional tolling orders. Because it doesn't have all the evidence. It simply chooses not to indict yet. Consistent with what it does. It can't get a tolling order because it doesn't have all the offenders. It does not need all the offenders to get a tolling order. It needs to identify which offenses it's investigating. Sufficient for the district court reviewing the application. To grant tolling for those offenses. So in a conspiracy scheme. It would be able to say as they did here. Rincon and Shira are the primary conspirators. They were bribing PEDAVASA officials. Others were involved. We want to toll those offenses. Later they may learn other people are involved. What they can't do. Is indict that exact scheme. And that offense that's at issue in the statute. And then later ask to toll that exact same offense as to other people. They've already indicted. And I'm drawing this from the text of the statute. This isn't us trying to implant policy onto this. The government is trying to invert the principle. That you read limitations liberally in favor of repose. Instead it wants to liberally interpret the statute in its own favor. It can toll offenses as to anyone with very few limitations. The only limitation is if this specific person has been indicted. You can't. But frankly that's not a limitation. If the person has been indicted. This statute that allows suspension of the running of statute of limitations is impossible. There is no more running of the statute of limitations. The indictment stopped the clock. So that quite simply can't be the approach. And so I don't believe that this interpretation cabins prosecutorial discretion or authority at all. It's consistent with how it charges otherwise. If you think of an example, just kind of a run of the mill bank robbery that involves gunmen and a getaway driver. The government often has to decide do we indict early when we can get the getaway driver and risk that the gunman may flee. He'll learn of the indictment and he'll flee. They make their decision. Do we do it now or do we wait? But then they live with the consequences. This exact same thing is true under 3292. If they need additional tolling to get foreign evidence, they are allowed to do that for a period of up to three years. And in fact in this case what they got was 2015 they indicted Rincon and Shira. 2017 they indicted numerous other defendants in our case within the statute of limitations. It's only the 2019 superseding indictment that is impermissible because to be timely it would rely on the 2017 tolling application. So the government actually in this case had a lengthy period of time and did indict numerous people for these offenses. But I don't think the statute permitted what they believe it did. I do think that the 2017 tolling application was improvidently granted was the words of Judge Hoyt in the district court. And I do think it was ineffective. The Traynor case is a district court case, I believe Southern District of Florida. It was affirmed on appeal. But there dealt with a different issue under this statute. And the court said the government bears the burden. This is an ex parte proceeding. There's no adversary. They have the burden of meeting the statutory requirements. If they fail to do that, unfortunately the clock keeps ticking. There is no tolling. That dealt with a different factual scenario of how much evidence did they need to present. But the idea is the same here. The government must comply with the dictates of the statute, and they didn't. So hopefully that explains our position in that it doesn't cabin their discretion. You want to turn to anything? You're going to put all your eggs in the tolling basket? Are you going to turn to something else? I do think that would be sufficient, but I will briefly touch on the others. In terms of due process, the government didn't mention it here. The district court did independently dismiss for lack of a due process nexus. And this court has certainly dealt with due process a lot in different contexts lately. But the criminal context, this court has said, primarily in Lawrence but then Vasquez and Rojas, that due process requires a sufficient nexus between the criminal defendant, their conduct at issue, and the United States. The government's error in its brief is to conflate the Lawrence requirement, looking at the individual's contacts with the U.S., with the broader crime, the conspiracy's contacts with the U.S. That isn't what Lawrence did. So in Lawrence, they dealt with a conspiracy where most of the participants were U.S. citizens. But Defendant Lawrence was not. He raised the challenge, this is a violation of due process. I don't have sufficient ties to the U.S. to justify this prosecution. The court did not look at all the U.S. citizens and their conduct. It looked only to the individual Lawrence and his connections. And the reason we go to civil case law for an analogy is because there's not a lot of development on the criminal side. But it's the same Fifth Amendment due process, where the concern is the burden of hauling someone from a foreign country in chains to face charges when it's fundamentally unfair because they had little connection to this country. So here, Mr. Murta is a Swiss citizen who was working for a Swiss company. Both of those are alleged in the indictment. The government alleges that his role was to open bank accounts for Venezuelans in Portugal and Dubai. Now, money was eventually transferred, some of it from U.S. banks, to those accounts. But his role was operating overseas, opening bank accounts overseas for Venezuelans. There's no allegation that there was any conduct in Miami? There is one Miami trip. I believe it's page 79 of the record, but it's in the indictment. It's in the money laundering conspiracy charge, and it says in connection with that money laundering conspiracy, he traveled to Miami for about 24 hours. I think it says a two-day span, but it's about 24 hours for the purpose of meeting with conspirators in connection with the scheme. No other details. Outside of the record, those two people named in the indictment say they don't remember meeting him there. But as terms of the indictment, it says he did travel there in connection with the scheme. It doesn't elaborate. It doesn't say did they plan, did they commit a crime, what discussions did they have. It just simply doesn't elaborate. But I would say that just isn't enough on its own. a quick 24-hour visit when all of his conduct is targeted overseas, opening foreign bank accounts, helping foreign citizens. Where he happens to discuss that, if he discussed it, isn't a due process concern. The indictment also says they had meetings in Caracas and Dubai. Frankly, his whole connection is overseas. In terms of jurisdiction, because I'm running out of time, but I'll just quickly turn there. I do think the government is wrong that they can get to Step 2. This court in Vasquez, Supreme Court in RJR Nabisco, said if and only if there's no extraterritorial application indicated in the statute, you go to Step 2. Also, what I wanted to say on that was in terms of Gabbardi, the Hoskins 1 decision is the primary decision to look to, in my opinion. The government here makes mostly the same arguments it made to the Second Circuit that they rejected. Gabbardi applies not as the government says, but it applies when Congress indicated an affirmative intent to exclude certain participants from coverage. And here, the legislative history is replete in the FCPA with Congress's concern to not overextend into foreign countries. So Congress was very careful, and the Second Circuit gets into detail with this, to limit the categories of conduct in people that can be prosecuted under the FCPA. That's the affirmative intent that Gabbardi requires to say you can't expand jurisdiction by reference to conspiracy liability. Counsel, your time is about to run out, and I'll ask Judge Graves to allow you to answer this question regarding the motion to suppress. The district court stated, and I'm quoting here, that according to the defendant in instances where his answers appeared to the agents to be untruthful or inaccurate, the agents became argumentative, attempting to persuade him to change his statements and also that the agents' questions were asked in an intimidating manner and were designed to elicit incriminating responses. Without an evidentiary hearing, where should we look in the record for support for those findings? I don't know that you can, Your Honor. Those are not facts that we put into the record, and they're not grounds on which we're defending the district court's decision. We think that it can stand on its own on other grounds, particularly in the involuntariness of the deception of saying you're only a witness, which under Portuguese law means your statements won't be used against you. But for the evidentiary hearing question, at page 729 of the record, the government opposed our request for an evidentiary hearing. We filed the motion to suppress and said we need an evidentiary hearing, and the government opposed it. Yet now they're here saying it's error to have ruled without it. I find that inconsistent and do think they've waived that argument. And I see my time's up. Thank you, Your Honors. All right. Thank you, Counsel. Rebuttal. Thank you, Your Honor. Just going backwards on a few points. The government on the suppression issue did not oppose an evidentiary hearing. The government opposed granting the suppression motion. It never said there shouldn't be an evidentiary hearing because the government believed, just like it does in this Court, that on the facts, even as asserted by defendant, suppression isn't justified. On the due process issue, where a defendant said the scheme is only charged in the money laundering count, that paragraph 206 is incorporated in paragraph 235 of the FCPA conspiracy count. The sentence says he went to Florida in connection with the scheme. That refers to the entire scheme. For the rest of due process, I'm going to rely on our brief because there is so much U.S. connection here, including his travel. But even without his travel, this Court could look to Iosifov for a due process decision where the defendant was abroad the entire time. But by having all these U.S. connections, conspiring with U.S. people, there's no due process problem with that. On statute of limitations, the defendant is, in a plain text interpretation, what he really wants this Court to find is that before return of an indictment means before return of any and all indictments. That would be what it would need to say to cover all the indictments. But it says return of an indictment. And if you put that together with the context and the purpose of the statute and how grand juries work, this Court should interpret it like that. As long as the tolling application was before an indictment, then it satisfies the plain text of the statute. How long, and I guess I'm looking for a limiting principle then, how long would the government have to, if it identifies an offender, how long does it have to seek an indictment against this identified offender? If you've already told the statute of limitations. It's capped by the three-year period of suspension in 3292. So that's the fail-safe on abuse. Other than that, as long as there's a good-faith effort that the grand jury is still investigating, that it's going towards an indictment, which the district court makes that decision, Judge Lake made that decision, then it's before an indictment. The defendant pointed out that in the 2017 tolling application, there was a sentence that said no new offenses were identified. That was in a section of the MLAB, not describing the factual offenses, but simply listing the offenses. If you look at the 2015 MLAB, it's just 371 and then quoting the statute, or the FCPA and quoting the statute, not describing the offenses. If this Court decides that it needs, that the 2017 indictment, or the, sorry, the Merchant indictment needs to be alleging a different offense than the 2015 indictment, it can look at the indictment and it can make a decision that as charged, it does. The conspiracy offenses are different, even if it's possible that they could have been charged as one big single conspiracy. We argue that the money laundering charges at least are new offenses. Defendant's response to that is only if a tolling application specifically sought evidence about those specific money laundering charges could tolling happen. That's not how it works. The statute tolls based on a rather amorphous request for evidence because you don't know what you're looking for. You then don't go back and make sure that every piece of evidence was specific to a charge. As long as the offense as broadly defined is what's charged in the indictment, then the tolling order is valid. The defendant points to statute of limitations being interpreted in terms of repose. While that's true, this is an exception to a statute of limitations period. The statutory purpose is to give the government more time for an indictment. This statute should be interpreted with that in mind. I see my time is up. Thank you, Counsel. We'll take this matter under advisement and we are adjourned.